**R. Carroll McCARDLE and Glenda McCardle, Plaintiffs,**

v.

**ARKANSAS LOG HOMES, INC., Traditional Living, Inc., and Tod H. Schweizer, Defendants.**

**Civ. A. No. J84–0191(L).**

United States District Court, S.D. Mississippi, Jackson Division.

Feb. 26, 1986.

Alvin M. Binder, Wayne Milner, Binder, Knapp, Jackson, Miss., for plaintiffs.

John E. Wade, Jr., R. Wilson Montjoy, II, Brunini, Grantham, Jackson, Miss., for Arkansas Log Homes.

### MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on motions of defendants Traditional Living, Inc. and Tod H. Schweizer to dismiss for lack of jurisdiction over the person pursuant to Rule 12(b) of the Federal Rules of Civil Procedure. The motions are consolidated for purposes of this opinion. Plaintiffs R. Carroll McCardle and Glenda McCardle filed timely response in opposition to the motions, and the court has reviewed the memoranda with attachments together with pertinent parts of the record in considering the motion.

The material facts underlying this action are undisputed. On June 6, 1978, the McCardles entered into a contract with defendant Arkansas Log Homes, Inc. (Arkansas Log) to purchase a log home package. Delivery of the building components for construction of the home was made by Arkansas Log to the McCardles on July 25, 1978. Included with the building components on delivery was a construction guide with supplement and blueprints. The McCardles completed construction of the log home, using the building materials and the building instructions contained in the "Plymouth B" log home kit sent them by Arkansas Log.

Approximately one year after the log home construction was completed, the McCardles discovered that the logs sent them in the "Plymouth B" kit were infested with wood-boring beetles. The logs were precut and packaged by Arkansas Log at its plant in Mena and shipped to the McCardles without substantial change in their condition. Plaintiffs' original complaint in this cause seeks both compensatory and punitive damages against Arkansas Log on the theories of strict liability, breach of the implied warranties of merchantability and fitness and common law negligence.

On April 2, 1985, plaintiffs amended their complaint to add as party defendants the movants herein. Plaintiffs averred that Traditional Living was doing business in Mississippi by and through its subsidiary, Arkansas Log, thus conferring in personam jurisdiction on this court pursuant to the "doing business" provision of the Mississippi Long-Arm Statute, Miss.Code Ann. § 13-3-57 (1972).[1] Additionally, plaintiffs alleged that there existed such unity of interest between Arkansas Log, Traditional Living and the then-president of both corporations, Tod H. Schweizer, that the fiction of a separate corporate existence should be

disregarded. The instant motions of Traditional Living and Tod H. Schweizer raise the issue of when and under what circumstances a plaintiff may "pierce the corporate veil" for purposes of acquiring long-arm jurisdiction over alleged alter egos of a corporation for which jurisdiction is proper. It is undisputed that neither Traditional Living nor Tod H. Schweizer performed any independent act or manner of business sufficient to confer in personam jurisdiction over them in a Mississippi forum.

■ The reach of federal jurisdiction over a non-resident defendant in a diversity action is measured by a two-step inquiry: (1) the law of the forum state must provide for assertion of such jurisdiction; and (2) the exercise of jurisdiction under state law must comport with the dictates of the Fourteenth Amendment Due Process Clause. *Smith v. DeWalt Products Corp.*, 743 F.2d 277, 278 (5th Cir.1984). It is against this broad constitutional backdrop that the court addresses the applicability of the piercing doctrine to the instant case.

Under recognized principles of corporate law, a corporation possesses a separate identity from its shareholders, whether such shareholders are individuals or corporations. *FMC Finance Corp. v. Murphree*, 632 F.2d 413, 421 (5th Cir.1980); *North American Plastics v. Inland Shoe Mfg. Co.*, 592 F.Supp. 875, 877 (N.D.Miss. 1984) (applying Mississippi law). "The corporate veil should not be 'pierced' unless the corporation exists to perpetrate a fraud or is a mere instrumentality, agent, adjunct, or sham designed to subvert the ends of justice." *North American Plastics*, 592 F.Supp. at 877–78 (citing *Johnson & Higgins of Mississippi, Inc. v. Commissioner of Insurance of Mississippi*, 321 So.2d 281, 285 (Miss.1976)). Additionally, the piercing doctrine is to be applied "with great caution and not precipitately, and will not be

---

1. Miss.Code Ann. § 13-3-57 provides in part:
 Any nonresident person, firm, general or limited partnership, or any foreign or other corporation not qualified under the constitution and laws of this state as to doing business herein, who shall make a contract with a

resident of this state to be performed in whole or in part by any party in this state, or who shall do any business or perform any character of work or service in this state, shall by such act or acts be deemed to be doing business in Mississippi.

applied where those in control have deliberately adopted the corporate form in order to secure its advantages in the absence of any violence to the legislative purpose by treating the corporate entity as a separate legal entity." *T.C.L., Inc. v. Lacoste*, 431 So.2d 918, 922 (Miss.1983).

The opinion of Judge Neal Biggers in *North American Plastics, supra,* is especially instructive on this question. There, plaintiff had obtained a judgment of liability against Inland Shoe, to which Inland Shoe responded by declaring bankruptcy. Subsequently, plaintiff amended its complaint to seek recovery against two corporations which allegedly were alter egos of Inland Shoe, and Judge Biggers granted separate motions to dismiss as to each corporation. 592 F.Supp. at 877. With particular reference to the inherent tension between granting the necessary liberal construction to plaintiff's complaint on a motion to dismiss and the danger of lightly piercing the corporate veil to acquire long-arm jurisdiction only to find upon prolonged factual inquiry that the piercing doctrine was inapplicable, the court set forth the following standard:

> Thus, this court holds that, absent a sufficient allegation of particularized facts, judicial economy requires that the corporate veil should not be preliminarily pierced for long-arm jurisdiction on the mere unsubstantiated allegations in the pleadings.

*Id.* at 879.

Quoting from *Fish v. East,* 114 F.2d 177, 191 (10th Cir.1940), and *Johnson v. Warnaco, Inc.,* 426 F.Supp. 44, 49 (S.D.Miss.1976), Judge Biggers set forth the following factors relevant to the determination of whether plaintiff has made sufficiently particularized allegations demonstrating the applicability of the piercing doctrine to the facts of the case:

> (1) The parent corporation owns all or a majority of the capital stock of the subsidiary. (2) The parent and subsidiary corporations have common directors or officers. (3) The parent corporation finances the subsidiary. (4) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation. (5) The subsidiary has grossly inadequate capital. (6) The parent corporation pays the salaries or expenses or losses of the subsidiary. (7) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation. (8) In the papers of the parent corporation and in the statements of its officers, "the subsidiary" is referred to as such or as a department or division. (9) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation. (10) The formal legal requirements of the subsidiary as a separate and independent corporation are not observed.

*Id.*

In their amended complaint, the McCardles make broad factual averments, on information and belief, concerning the "corporateness" of Arkansas Log. They allege only that Traditional Living and its president, Tod H. Schweizer, so controlled and dictated the policies of Arkansas Log, for the purpose of defrauding consumers in the position of plaintiffs, that the fiction of separate corporate existence should be disregarded. No attempt was made in the amended complaint to satisfy the requirement of particularized factual allegations tending to show the applicability of the piercing doctrine. Although the instant motions have been on this court's docket for over five months, this court deferred ruling through the end of discovery plus extended time for response to discovery in anticipation of receiving plaintiffs' second amended complaint. None has been forthcoming; however, the court does have the responses of Traditional Living and Tod H. Schweizer to plaintiffs' interrogatories and requests for production of documents. The responses indicate the following:

(1) That Tod H. Schweizer, Brian E. Patterson and Jesse P. Ware were corporate officers of both Traditional Living and Ar-

kansas Log from the time Arkansas Log was incorporated in 1976 through the time suit was filed. However, Arkansas Log's board of directors also included three residents of Mena, Arkansas, the principal place of business of Arkansas Log, in the 1976–1985 period: Scott Cooper, Robert Berger and Robert Hillyer.

(2) That no consideration was paid by Arkansas Log to Traditional Living for the right to sell "Plymouth B" log homes.

(3) That Arkansas Log executed no notes, mortgages or deeds of trust to Traditional Living at any point during the existence of Arkansas Log.

(4) That Arkansas Log is a guarantor on a note executed on March 24, 1983 by Traditional Living to Jesse Ware in the amount of $7,400,000.00, and that such note with interest is paid by Traditional Living from available assets.

In unrefuted affidavits by Tod H. Schweizer, individually and as president of Traditional Living, the following facts are established:

(1) That Schweizer and Brian Patterson own all the stock of Traditional Living, with neither owning a controlling interest.

(2) That Schweizer has assumed no personal liability on any obligations of Traditional Living, and has not furnished any corporate assets from his personal resources.

(3) That Traditional Living is an investment corporation with no employees, whose sole asset is stock ownership in eight companies which, like Arkansas Log, are independently managed, and that Traditional Living has never transacted any business in Mississippi.

(4) That Arkansas Log does not hold itself out to the public as a subsidiary of Traditional Living.

(5) That all formal requisites of corporate identity have been maintained by both Traditional Living and Arkansas Log, and that independent minutes and ledgers are kept by each corporation.

(6) That there is no commingling of the funds of Traditional Living and Arkansas Log, and that Traditional Living does not provide deficit financing for or pay any of the losses of Arkansas Log.

 Thus, on the established facts before the court, it is clear that the prerequisites of an independent corporate entity were recognized and complied with by Arkansas Log and Traditional Living. It is likewise clear under Mississippi law that the fact that there existed a commonality of ownership or officers is insufficient for application of the piercing doctrine. *North American Plastics*, 592 F.Supp. at 879 (citing *U.S. v. State Tax Commission of State of Mississippi*, 505 F.2d 633, 637 (5th Cir. 1974); *Home Telephone Co. v. Darley*, 355 F.Supp. 992, 999 (N.D.Miss.1973) *aff'd*, 489 F.2d 1403 (5th Cir.1974)). And yet such commonality of ownership is the only one of the ten relevant factors arguably present here. It is, therefore, apparent from all that appears in the record that the McCardles have not made out a *prima facie* case whereby the corporate veil may be pierced. *North American Plastics*, 592 F.Supp. at 879. Nor have the McCardles pled specific facts sufficient to establish that Arkansas Log at any time operated as an alter ego of Tod Schweizer. *See generally Dillman v. Nobles*, 351 So.2d 210 (Miss.1977).

Accordingly, this court is of the opinion that plaintiffs have failed to establish a *prima facie* showing that the corporate veil of Arkansas Log should be preliminarily pierced for purposes of attaining long-arm jurisdiction over Traditional Living or Tod H. Schweizer.

It is, therefore, ordered that the motions to dismiss of Traditional Living and Tod H. Schweizer are granted.